UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MONESHA MARTIN** | **CIV. ACTION NO. 3:22-00256** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WALMART, INC.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is Plaintiff Monesha Martin's motion for leave to file a first supplemental and amending complaint to join a diversity-destroying defendant [doc. # 9], and an associated motion to remand [doc. # 10] should the court grant the amendment. The motions are opposed. For reasons assigned below, the motion for leave to amend is GRANTED, and, therefore, it is recommended that the motion to remand be GRANTED, and that this matter be REMANDED to the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.

Background

On September 30, 2021, Monesha Martin ("Martin"), a Louisiana domiciliary, filed the instant suit for damages in the 4th Judicial District Court, for the Parish of Ouachita, State of Louisiana, against Defendant, Walmart, Inc. (Petition). Martin alleged that on October 3, 2020, she was a patron at the Walmart Supercenter Store on Louisville Avenue, Monroe, Louisiana, when she slipped and fell on some water as she was approaching the register. *Id.*, ¶ 5. As a result of the fall, Martin alleges that she suffered severe and debilitating injuries, extensive contusions, muscle aches, concussion, joint strain/sprain, and pain. *Id.*, ¶ 10. Martin seeks to recover a comprehensive list of damages, including for permanent disability. *Id.*, ¶ 11.

Walmart filed its answer on December 1, 2021. (Answer; Notice of Removal, Exh. B [doc. # 1-3]).

On January 25, 2022, counsel for Walmart reached out to Martin's attorney to inquire whether the amount in controversy exceeded $75,000. *See* Jan. 25, 2022, email from C. Heck to A. Hooper documenting the conversation; Notice of Removal, Exh. C [doc. # 1-4]). Mr. Heck replied that he believed the amount in controversy was likely over $75,000, but that he would have to confer with his co-counsel to be certain. *Id*.

On January 26, 2022, Mr. Heck emailed Mr. Hooper and confirmed that the claim exceeded $75,000. *Id*. That same day, Martin filed a motion for leave to file a first supplemental and amending petition to join an additional, *non-diverse* defendant, Samuel Lockwood, a Walmart maintenance employee, who had seen the spill on the floor prior to Martin's accident but had failed to take precautionary measures to ensure that no one walked into the area. (1st Suppl. & Amend. Petition; Response to Removal Order [doc. 14-5]).

On January 27, 2022, when Walmart removed the case to federal court on the basis of diversity. *See* Notice of Removal. In the Notice of Removal, Walmart established that the parties to the suit, prior to removal, were completely diverse and that the amount of controversy exceeded $75,000. *Id*.

On January 31, 2022, the state court granted Martin's motion for leave to amend to join Lockwood. *Id*. However, the order was without effect because the state court had been divested of jurisdiction.

On February 25, 2022, Martin filed the instant motion for leave of court to essentially re-file her proposed amended complaint that she had attempted to file in state court prior to

removal. As before, the proposed amended complaint seeks to join non-diverse Walmart employee, Samuel Logwood. (Prop. 1st Suppl. & Amend. Compl. ("FSAC") [doc. # 9-3]). Because Martin and the proposed defendant, Logwood, are both Louisiana domiciliaries, his joinder will destroy diversity jurisdiction and require remand. 28 U.S.C. ' 1447(e). §Consequently, Martin filed a contemporaneous, but effectively conditional, motion to remand the case to state court, in the event that the court decides to grant her motion for leave to file her amended complaint.

Walmart filed its oppositions to the pending motions on March 23, 2022. [doc. #s 16-17]. On March 25, 2022, Martin filed a combined reply, styled as a "Supplemental Memorandum," in support of her motions. [doc. # 18]. Accordingly, the matter is ripe.

## Law and Analysis

### I. Motion for Leave to Amend

Rule 15 provides that leave to amend shall be "freely [granted] when justice so requires." FED. R. CIV. P. 15(a)(2). This rule is circumscribed, however, by 28 U.S.C. § 1447(e) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *see also Ascension Enters. v. Allied Signal*, 969 F. Supp. 359, 360 (M.D. La. 1997) (Section "1447(e) trumps Rule 15(a).").

Under these circumstances, courts are required to "scrutinize [the] amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Specifically, the court must balance the defendant's interest in maintaining a federal

forum, with the competing interest of avoiding parallel lawsuits by considering the following "*Hensgens* factors,"

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367-368 (5th Cir. 2010) (citation omitted).

One issue that often is considered within the *Hensgens* rubric is whether plaintiff has a reasonable possibility of recovery against the non-diverse defendant(s). For example, a plaintiff will not be "significantly injured" under *Hensgens* by a court's denial of leave to add a clearly meritless claim. *Wilson*, 602 F.3d at 368. Thus, the Fifth Circuit has held that it lies within a district court's "discretion" to deny a proposed amendment as futile, if there is no reasonable basis to predict that plaintiff will be able to recover against the would-be, non-diverse defendant. *Id*.

An earlier Fifth Circuit panel made it clear that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.,* a request fraudulently to join a party) would *never* be granted." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir.1999) (emphasis added).[1] In other words, the party opposing joinder has the opportunity to prevent joinder by demonstrating that plaintiff has no "colorable claim"

---

[1] The court added that, because the improper joinder doctrine (f/k/a the "fraudulent joinder doctrine") applies only to those non-diverse parties on the record in state court at the time of removal, it necessarily does not apply to post-removal joinders. *Cobb*, 186 F.3d at 677.

against the proposed defendant. *Id*. This presents a potentially dispositive threshold issue, for if plaintiffs fail to state a colorable claim, then the court cannot permit amendment. *Cobb, supra*.

When deciding whether plaintiffs state a colorable claim for relief against the non-diverse defendant(s), the district court may permit "limited discovery into 'discrete and undisputed facts' that had been omitted from the complaint and that might preclude recovery against the in-state defendant . . ." *Wilson*, 602 F.3d at 373 (citing *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573-74 (5th Cir. 2004)).

a) <u>Colorable Claim</u>

In *Canter v. Koehring Co.*, the Louisiana Supreme Court detailed the circumstances under which a corporate officer or employee may be held individually liable for injuries sustained by third parties. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)). The court acknowledged that "the officer, agent, or employee may . . . be liable for injury resulting from his fault independent of any obligation imposed upon him by virtue of his employment duties, even though the fault occurs during the course of his employment." *Canter*, 283 So.2d at 722, n.7. In addition, liability may be imposed on such individuals, even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.2d at 936. Where the sole basis for the duty breached by the employee or manager is that imposed by virtue of the employment or agency relationship, then liability may be imposed under the following conditions:

1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.

    2.       The duty is delegated by the principal or employer to the defendant.

    3.       The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

    4.       With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford*, 32 F.3d at 936 (citing, *Canter*, 283 So.2d at 721). Stated differently, "[u]nder Louisiana law, an employee is personally liable if (1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care." *Moore v. Manns*, 732 F.3d 454, 456–57 (5th Cir. 2013) (citations omitted).

    It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." LA. R.S. 9:2800.6(A). Generally, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm."

*Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813-814 (La. 1993) (citations omitted). Furthermore, "[t]he owner or custodian is required to discover any unreasonably dangerous conditions on the premises and correct the condition or warn potential victims of its existence." *Hutchison v. Knights of Columbus, Council No. 5747,* 847 So.2d 665 (La. App. 4th Cir. 2003). It bears repeating that an employee may be held individually liable by a third person for breach of a duty that arises out of the employment or agency relationship between the employee and his employer. *Canter*, 283 So.2d at 722-723.

In her proposed pleading, Martin alleges that,

> [u]pon information and belief, Defendant Samuel Logwood was a maintenance employee working for Defendant Walmart on the date of the accident. Logwood saw the spill on the floor prior to Plaintiff's fall, and instead of taking steps to prevent patrons from traversing through the spill on the floor, or notifying an employee to make sure nobody walked in the area, instead left the scene to go to the back of the store to get something to clean the floor with.
>
>    *   *   *
>
> As the maintenance employee, Logwood had the duty to clean up spills on the floor, and to make sure the area where spills occurred were properly marked or closed off so as not to cause harm to the public, and to [sic] duty to protect, warn and safeguard customers from such harm.

(FSAC, ¶¶ 3-4). Martin contends that Logwood was negligent, amongst other reasons, for failing to warn patrons about the existence of the hazardous condition and for failing to exercise reasonable care by not notifying another co-employee about the hazardous condition before leaving the location unattended. *Id*., ¶ 6.

Walmart asserts that Martin did not allege facts to show that she has a cause of action against Mr. Logwood or that he breached a personal duty owed to Martin, rather than a general duty owed to all Walmart customers. Walmart further argues, in effect, that Logwood was not

7

negligent at all because he acted reasonably by leaving the scene to go retrieve materials with which to clean the spill.

It is manifest, however, that Walmart owes a duty to its customers to make a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage. *See* La. R.S. § 2800.6. Moreover, according to Martin, Walmart delegated this duty of care to its maintenance personnel, including Logwood. In fact, Logwood's actions seem to support this delegation of duty because, according to Martin, Logwood departed the spill location so he could go find something to wipe up the hazardous condition. Therefore, the issue becomes whether Logwood acted reasonably in leaving the scene, or should he, instead, have stayed at the spill location to protect patrons from traversing the hazard until such time as he was able to ask a passing co-employee to either retrieve some cleaning supplies or to switch places with him so he could do so. Ultimately, whether Logwood acted reasonably under the circumstances is not an issue that can be resolved at the pleading stage; rather, it remains an issue for the trier of fact. *See Smith v. Canal Ins. Co.*, Civ. Action No. 07-0991, 2008 WL 11350307, at *1 (E.D. La. June 6, 2008). Until such time, it is clear that Martin has alleged sufficient facts to plausibly establish that Logwood breached a duty he owed to her as a store patron, which was a proximate cause of her resulting damages.

In other words, Walmart has not demonstrated that Martin has no "colorable claim" against the prospective, non-diverse defendant.

    b)     *Hensgens* Considerations

Turning to the *Hensgens* factors, the undersigned observes that district courts have mulled various considerations to determine whether the purpose of a given amendment is to defeat federal jurisdiction. For example, some courts will ask "whether the plaintiffs knew or

should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862 (E.D. La. May 12, 2005); *see also Penny Realty Inc. v. Sw. Capital Servs., Inc.*, No. 08-0473, 2008 WL 2169437, at *2 (W.D. La. May 23, 2008). Alternatively, other cases have recognized that "as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002); *see also Tillman v. CSX Transp. Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991) (upholding a finding that where the plaintiff had a valid cause of action against a defendant, the principal purpose of the amendment was not to defeat federal jurisdiction).

More recently, this court has adopted the approach that as long as a plaintiff states a valid claim against the non-diverse defendant, then the purpose of the amendment is not to destroy diversity jurisdiction. *Diamond McCattle Co. LLC v. Range Louisiana Operating LLC*, Civil Action No. 18-0229, 2018 WL 6728587 (W.D. La. Dec. 21, 2018) (Doughty, J.). As discussed above, Martin has a viable cause of action against Logwood. Therefore, the purpose of the amendment is not to defeat diversity. *Diamond McCattle Co. LLC, supra.*[2]

As to the timeliness of the proposed amendment, there is no indication that Martin unduly delayed amendment. Walmart adduced evidence to show that within days of the October 3, 2020, accident, Martin knew that "Mr. Sam" was the name of the maintenance technician who had observed the water on the floor before her accident. (Decl. of Tarl Gay & Attach.; Def.

---

[2] While the timing of Martin's attempt to join Logwood in state court is suspicious, Martin only learned Logwood's full name three weeks earlier, and Mr. Heck had not yet enrolled as counsel on behalf of Martin.

Opp. Brief, Exhs. 1-1(A) [doc. #s 16-1-2]). Walmart argues that Martin could have uncovered Logwood's last name via simple inquiry.

According to Martin, however, she did not learn Logwood's full name and address until January 6, 2022. (Affidavit of Monesha Martin; Pl. M/Leave to Amend, Exh. [doc. # 9-5]). Moreover, she served interrogatories on Walmart, together with the Petition, which specifically asked Walmart to disclose, *inter alia*, the names of all persons who mopped and/or were responsible for maintenance and upkeep of Walmart's floors. (Interr. & Reqs. for Prod.; Pl. Reply Brief, Exh. 1 [doc. # 18-1]). Walmart, however, never responded to the discovery.

In sum, Martin sought leave to amend to join Logwood less than two months after Walmart appeared in the suit and a mere three weeks after she first learned Logwood's full name, prior to removal. Despite the filing of her motion for leave to amend in state court, Walmart proceeded to remove the case to federal court. Walmart certainly cannot claim unfair surprise when Martin essentially re-filed her motion for leave to amend less than 30 days later. Accordingly, the court finds that Martin was not dilatory in seeking amendment, and Walmart failed to show that it was materially prejudiced by any purported delay.

As to prejudice if amendment were not permitted, the court observes that, so long as Walmart is able to fund any judgment rendered in Martin's favor, then Martin likely will not suffer any financial repercussions if leave to amend were denied. Indeed, if, as Walmart concedes in its brief, Logwood was acting within the course and scope of his employment, then Walmart will be liable for his negligence. *See* LA. CIV. CODE ART. 2320.

Nonetheless, it is conceivable that Martin could suffer some prejudice in discovery and case preparation if Logwood was to remain a non-party. *See Ellender v. Rite Aid Pharmacy*,

No. 08-0722, 2008 WL 4200716, at *2 n.5 (W.D. La. Sept. 8, 2008). In addition, if leave to amend were denied, and Martin wished to pursue her claims against Logwood, then she would have to bear the burden of maintaining parallel lawsuits arising out of the same set of facts in both state and federal courts. This third factor no more than marginally weighs in favor of remand.

Finally, the other considerations "bearing on the equities" weigh in favor of remand. The possibility of parallel lawsuits threatens judicial resources, as well as the time and resources of the witnesses in the case, and raises the possibility of inconsistent results. In addition, the proceedings have not reached the dispositive motion stage, nor is trial imminent. Discovery, to the extent it even has begun, remains in its infancy.

The court is keenly cognizant of removing defendant's interest in retaining its chosen federal forum. However, plaintiff enjoys a concomitant interest in preserving the state court forum that she chose originally. As Judge Rubin once remarked, "[f]orum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir.1983). "The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause." *Id*. In short, forum-shopping is a two-way street.

The court also shares Walmart's implied concern that individual employees may be subject to personal liability for acts that they likely performed for, or at the behest of their employer. However, it is of no moment that the employer might also share vicariously liable for

11

the actions of its employee. *Ford, supra*. Furthermore, the possibility of dual layers of potentially redundant liability presents an issue that remains within the particular province of the Louisiana legislature to redress.[3] In the meantime, this court is constrained to apply the law in its current form.

In sum, the *Hensgens* factors, when considered in their totality, weigh in favor of allowing the proposed amendment.[4]

## II. Remand

The joinder of a non-diverse defendant destroys the court's subject matter jurisdiction. *Cobb, supra*. Once joinder of a diversity-destroying defendant is permitted, remand to state court is not merely discretionary, it is mandatory. *Id.*; 28 U.S.C. § 1447(e).

## Conclusion

For the above-assigned reasons,

IT IS ORDERED that Plaintiff Monesha Martin's motion for leave to file a first supplemental and amending complaint [doc. # 9] is GRANTED.[5] As a result,

---

[3] In the wake of *Canter*, which permitted injured workers to file suit against their co-employees, notwithstanding their employers' workers compensation immunity, the legislature amended the workers' compensation statute to preclude negligence suits brought against co-employees. Similar legislation might be warranted in the present context.

[4] In its brief, Walmart cited a range of cases that reached outcomes inconsistent with this case. To the extent that those opinions are not otherwise distinguishable, they remain district court decisions that are not binding on this court.

[5] As this motion is not excepted within 28 U.S.C. ' 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

IT IS RECOMMENDED that Monesha Martin's motion to remand [doc. # 10] be GRANTED, and that this matter be REMANDED to the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 26th day of May, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE